OREGON SHORT LINE R. CO. v. PORTLAND CATTLE LOAN CO.

SAME v. PORTLAND FEEDER CO.

(District Court, D. Oregon. September 17, 1917.)

Nos. 7232, 7233.

CARRIERS ⟨⟩189—CARRIAGE OF LIVE STOCK—RATES—TARIFFS.

In an action by a railroad company to recover balances due as freight for shipments of cattle, published tariffs *held* to show that a differential rate from the point of shipment to a central point should be collected; provisions for charging rate from central point in case of shipments routed in a particular way not applying.

At Law. Actions by the Oregon Short Line Railroad Company, a corporation, against the Portland Cattle Loan Company, a corporation, and against the Portland Feeder Company, a corporation. Judgments for plaintiff.

A. C. Spencer and W. A. Robbins, both of Portland, Or., for plaintiff.

Carey & Kerr and Charles A. Hart, all of Portland, Or., for defendants.

WOLVERTON, District Judge. These cases were instituted to recover certain balances alleged to be due plaintiff as freight for shipments of cattle, arising by reason of alleged erroneous computations of freight when the shipments were made and settled for; the plaintiff being required to institute the actions under the federal statutes. Several shipments are involved, a statement as to one of which will suffice for illustration of the whole.

Forty-four carloads of cattle were shipped from Hereford, Tex., to Amarillo, Tex., the latter being a station on the Pecos & Northern Texas Railway, where the shipment was combined into 43 cars, 27 of which were transported thence over the lines of connecting carriers to Pocatello, Idaho, and the remaining 16 to Butte, Mont., where they were delivered to the shipper.

The plaintiff claims that, under Joint Live Stock Tariff No. 100–A, then in force, the proper charges on these shipments are made up as follows: Local from Hereford to Amarillo, $26.40 per car, and from Amarillo to Pocatello, $116.50; making a total of $142.90 per car for shipment of the 27 cars. To Butte, the same local from Hereford to Amarillo, to which is added $125 to Dillon, Mont., and the local from Dillon to Butte, $19.80; total, $171.20.

The entire controversy centers about the local charge of $26.40 from Hereford to Amarillo; the defendants insisting that Hereford is a common point with Amarillo, and that the rate designated under section 2 of the tariff constitutes the entire rate from Hereford to Pocatello. This depends upon a proper construction of the tariff. Referring to section 1 thereof, under the head of "The Pecos & Northern Texas Ry. Co.," will be found lists of stations common with Amarillo, the

rate basis being Amarillo, and other lists of stations carrying differen-
tials with Amarillo; that is to say, the tariff indicating that certain
sums should be added to or deducted from the Amarillo rate basis.
By a note on page 24, it is explained that the differentials shown in
section 1 are to be added to or deducted from the Amarillo rates as
shown in section 2, pages 32 to 51, inclusive, to arrive at the through
rate, where application and routing is provided on pages 56 to 69. By
the same note, it is further explained that, where no differentials are
shown, the Amarillo rates as shown in section 2 are to be applied as
indicated. By another note, explanatory of section 2, it is stated that
rates shown in section 2, in columns headed "Amarillo," are to be
applied from stations shown in section 1 as taking Amarillo rate basis,
or same are to be used as a basis for arriving at through rates from sta-
tions shown in section 1 as taking differentials over or under Amarillo
rates, where application and routing is provided on pages 56 to 69,
inclusive, from such point of origin to destination station. On page
56 is found another note explaining application of rates, which reads:

"Rates provided herein from points of origin shown in section No. 1 to
points of destination shown in section No. 2 will apply only via the routes
indicated in chart on page 57, except as provided in item 350."

The exception is without application here. Note 1 to the above ex-
planation further provides:

"Where route number is not shown, there are no through rates applicable
from the originating line to the destination line via any route, except as
specifically provided in section No. 3."

These several explanatory notes respecting the application of the
tariff must be construed together, to ascertain their true meaning.
Reading the explanatory note to section 1 by itself, and without refer-
ence to the succeeding notes, its meaning would appear to be plain
that, where there were differentials, the rates shown in section 2
would not apply, unless the routing was provided on pages 56 to 69,
but that, where there were no differentials shown, the shipment would
take the section 2 rates, without regard to whether the application and
routing were provided on pages 56 to 69 or not. The note to section
2 merely emphasizes the thought that shipments from stations carry-
ing differentials with Amarillo will take the through rate only where
the application and routing are provided for on pages 56 to 69.

When, however, we turn to the note on page 56 respecting the ap-
plication of rates, we are advised that rates from points of origin shown
in section 1 to points of destination shown in section 2 will apply only
via the routes indicated on page 57. This is a specific declaration, gen-
eral in its scope, without reference to differentials, that the rates so
provided will apply only via the routes indicated on page 57. The note
thereto is but a reinforcement of the idea. Page 57 is, of course, in-
cluded within the limitations of pages 56 to 69. So that these later
explanatory notes are but a development of the intention which pos-
sessed the rate maker from the beginning, and that must be construed
to be that shipments from Amarillo common points, whether carrying
a differential or not, shall not take the through rate, unless where ap-
plication and routing are provided on pages 56 to 69.

Recurring again to note to section 1, page 24, the words "as indicated" in the last clause, as applying "where no differentials are shown," are susceptible of a construction, though not the natural one, viewing the context, as signifying or denoting a reference to the preceding clause and also to the note to section 2, page 32, as this latter note refers back to the item on page 24. So that the aforesaid latter clause would read that the rates shown in section 2 are to be applied as indicated by these explanatory notes, and not by section 2. This idea harmonizes the seemingly inconsistent and incongruous explanatory notes.

But, whatever may be the true rendering of the notes to sections 1 and 2, the notes on page 56 explaining the "application of rates" are directly applicable to the present controversy, as no Oregon Short Line Railroad routing is shown of shipments coming from and over the Pecos & Northern Texas Railway on page 57; and, as we have seen, the regulation is general, and specifically limits the application of rates from points in section 1 to points of destination in section 2 to the routes indicated in the chart on page 57.

This construction of the tariff results in a finding for the plaintiff in each cause of action, and upon all the counts as prayed. The findings will be general, but judgment thereon will be withheld until the defendants have had an opportunity to present such findings as they may deem essential for reserving such questions for review as they may desire.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes